Keith J. Miller
Bradley A. Suiters
ROBINSON MILLER LLC
Ironside Newark
110 Edison Place, Suite 302
Newark, New Jersey 07102
Tel: (973) 690-5400
*kmiller@rwmlegal.com*

John P. Margiotta (*pro hac vice* application to be submitted)
Parker C. Eudy (*pro hac vice* application to be submitted)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 West 42nd Street, 17th Floor
New York, New York 10036
Tel: (212) 813-5900
*jmargiotta@fzlz.com*
*peudy@fzlz.com*

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RICHEMONT INTERNATIONAL SA and VAN CLEEF & ARPELS, a division of RICHEMONT NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SILVERSMITHS INC. <br><br> Defendant. | Civil Action No. _____ <br><br><br> **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |

Plaintiffs Richemont International SA and Van Cleef & Arpels, a division of Richemont North America, Inc. (collectively "Richemont" or "Plaintiffs") for their Complaint against Defendant Silversmiths Inc. ("Defendant"), alleges as follows:

## SUBSTANCE OF THE ACTION

1. All of the claims asserted herein arise out of and are based on Defendant's repeated, willful, and unlawful manufacture, promotion, distribution, advertising, sale and/or offering for sale of jewelry products that are unlawful imitations of Plaintiffs' federally registered trade dress.

2. Plaintiffs bring claims for trademark and trade dress infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and related claims of unfair competition and dilution under New Jersey law. Plaintiffs seek injunctive and monetary relief and attorneys' fees.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) & (b). Supplemental jurisdiction exists over Plaintiffs' state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

4. This Court has personal jurisdiction over Defendant because (i) Defendant's place of incorporation and principal place of business is in the State of New Jersey, and/or (ii) Defendant has transacted business in the State of New Jersey and has contracted to supply or offer to supply goods or services in the State of New Jersey in connection with matters giving rise to this action.

5. Venue is proper in this district pursuant to Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. §§ 1391(b) and (c), because Defendant is subject to personal jurisdiction in this district due to its transacting of business herein and because a substantial portion of the events at

issue have arisen and will arise in this judicial district and Plaintiffs are suffering harm in this judicial district.

## THE PARTIES

6.      Plaintiff Richemont International SA is a société anonyme organized and existing under the laws of Switzerland, having a principal place of business at Route des Biches 10, Villars-sur-Glâne, Switzerland 1752.

7.      Plaintiff Van Cleef & Arpels, a division of Richemont North America, Inc., is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 645 Fifth Avenue, New York, New York 10022. Van Cleef & Arpels, a division of Richemont North America, Inc. is the exclusive distributor of Van Cleef & Arpels products in the United States.

8.      Upon information and belief, Defendant Silversmiths Inc. is a corporation organized and existing under the laws of the State of New Jersey, having a principal place of business at 1109 70th Street, North Bergen, New Jersey 07047.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**I.      VAN CLEEF & ARPELS**

　　　　A.      The VAN CLEEF & ARPELS Brand and Business

9.      Plaintiffs are a world-famous supplier of fine jewelry sold under the VAN CLEEF & ARPELS brand name. Since its inception in France in 1906, Richemont and/or its predecessors-in-interest have been known for manufacturing, producing, distributing, selling and offering for sale innovative, high-quality fine jewelry under the VAN CLEEF & ARPELS brand. Plaintiffs' products appeal to, among others, the luxury goods market and trade and are considered extraordinarily fashionable.

10.     Plaintiffs' Van Cleef & Arpels products are sold only in company-owned stores, in authorized specialty retail stores, and in authorized department stores. Richemont currently operates thirty boutiques under the VAN CLEEF & ARPELS name in the United States, including their famous New York City boutique located on the corner of 57th Street and 5th Avenue.

B.      Plaintiffs' Alhambra Collection and Related Intellectual Property Rights

11.     One of Plaintiffs' most well-known and sought-after jewelry designs is known as the "Alhambra." Plaintiffs' Alhambra collection was developed in France in the late 1960s and features a quatrefoil motif.

12.     To this day, Plaintiffs offer a collection of jewelry based on their first Alhambra design, which is now referred to as the "Vintage Alhambra" collection to distinguish it from later variations on the original design. Examples from the Vintage Alhambra collection are pictured below:



13.     Over time, Plaintiffs have introduced several variations of the original Alhambra design. The signature pieces in Plaintiffs' Alhambra jewelry collections incorporate a distinctive quatrefoil design composed of a unique combination of elements that collectively create a particular trade dress that is characteristic of Plaintiffs' Alhambra collections (the "Alhambra Trade Dress"). A close-up of an example of the Alhambra Trade Dress is depicted below:



14. The Alhambra Trade Dress consists of a three-dimensional configuration of a quatrefoil-shaped jewelry ornament in which:

1. the top portion of the quatrefoil piece has an outer edge that is beaded with an inner portion that is flat as well as four larger beads positioned at central points within it;

2. the bottom portion of the quatrefoil piece also has an outer edge that is beaded; and

3. the center portion of the quatrefoil piece is solid and not empty.

15. For decades and continuing through today, Plaintiffs have made widespread and exclusive use of the iconic Alhambra Trade Dress. Plaintiffs have invested a considerable amount of time, effort, and money advertising and promoting their jewelry and watch products bearing the Alhambra Trade Dress and has enjoyed enormous success selling such products in the United States and around the world. Products bearing the Alhambra Trade Dress have

received extensive unsolicited media coverage due to their innovative and distinctive design and their popularity with many high-profile celebrities.

16.  By virtue of extensive sales, advertising, and promotion, the Alhambra Trade Dress has become instantly recognizable to the public as exclusively denoting Plaintiffs and signaling the high quality of their products. As such, the Alhambra Trade Dress has obtained secondary meaning and is an enormously valuable asset of Plaintiffs.

17.  In addition to Plaintiffs' extensive and strong common law rights in the Alhambra Trade Dress, Plaintiffs own the following trademark registrations:

| *Mark* | *Reg. No.* | *Reg. Date* | *Registered Goods* |
|---|---|---|---|
|  | 4,326,883 | April 30, 2013 | Jewelry |
|  | 4,763,030 | June 30, 2015 | Jewelry; rings; pendants; earrings; necklaces; bracelets |
|  | 4,653,258 | December 9, 2014 | Jewelry |

18.  Printouts detailing the registration information for the above marks are attached hereto as <u>Exhibit A</u>. These registrations are all valid, subsisting, and in full force and effect. Moreover, each of these registrations has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and serves as conclusive evidence of the validity of the registered mark, of the registration of the mark, and of Plaintiffs' exclusive right to use the mark in commerce on or in connection with the products for which the mark is registered, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

## II.     DEFENDANT'S UNLAWFUL ACTIVITIES

19.     On information and belief, Defendant is in the business of offering for sale and selling jewelry products. Defendant operates a jewelry store in North Bergen, New Jersey.

20.     On information and belief, Defendant has manufactured, advertised, offered for sale, sold, distributed, imported, and/or exported earrings, necklaces, rings and/or other jewelry pieces bearing imitations of the Alhambra Trade Dress, which were not manufactured, authorized, or approved by Plaintiffs.

21.     On information and belief, Defendant sells jewelry pieces bearing imitations of the Alhambra Trade Dress at trade shows throughout the country, including in New York City, Miami, Florida, and Las Vegas, Nevada.

22.     On information and belief, Defendant is also a wholesale provider of jewelry and supplies jewelry pieces bearing imitations of the Alhambra Trade Dress to businesses throughout the United States using its website, https://silversmithsnyc.com/.

23.     Defendant uses its website and business cards, which are pictured below, to advertise its jewelry as being made of "sterling silver," "gold," and other fine materials, and necklaces on Defendant's website range in price from $40 to $700.

 

24.     In or around February 2020, Plaintiffs' agent observed necklaces bearing imitations of the Alhambra Trade Dress being sold by Defendant. Defendant was offering the infringing necklaces for sale for approximately $50.

25. Below are images of the imitation Alhambra jewelry that Plaintiffs' agent observed:



26. In March 2020, just prior to Covid shutdowns, Plaintiff sent a cease-and-desist letter to Defendant by email (at mimi@silversmithsnyc.com) and FedEx at Defendant's address in North Bergen, New Jersey. Defendant never responded to Plaintiff's March 2020 letter.

27. In 2023, Plaintiffs' agent again observed Defendant selling jewelry at a trade show in Las Vegas, Nevada, including necklaces bearing an imitation of the Alhambra Trade Dress, as shown below:



28.     Plaintiffs' agent also observed numerous packages of necklaces bearing an imitation of the Alhambra Trade Dress, as shown below:



29. On December 20, 2023, Plaintiff sent a cease-and-desist letter to Defendant by email (at mimi@silversmithsnyc.com and cris@silversmithsnyc.com) and FedEx at Defendant's address in North Bergen, New Jersey. Plaintiff referenced its 2020 letter in this new demand letter. Again, Defendant did not respond.

30. On April 26, 2024, Plaintiff sent a follow-up cease-and-desist letter to Defendant by email (at mimi@silversmithsnyc.com and cris@silversmithsnyc.com) and FedEx at Defendant's address in North Bergen, New Jersey. With this letter, Plaintiff included copies of all its prior correspondence to Defendant. Again, Defendant failed to respond.

31. Upon information and belief, Defendant knows, and at all relevant times knew or should have known, that the products it is/was selling and/or distributing are or were unlawful imitations of Plaintiffs' jewelry products, and Defendant advertises them as such. Defendant has

been repeatedly warned in writing of its infringing activities, and has persisted with its unlawful behavior nevertheless.

32. On information and belief, Defendant has sold jewelry pieces that bear imitations of Plaintiffs' marks and trade dresses to customers other than Plaintiffs' agent.

33. Defendant is not related to or affiliated with Plaintiffs in any way. Defendant has not sought or at any time received a license or authorization from Plaintiffs for any purpose whatsoever, including for the acts described herein.

34. Defendant's counterfeit and infringing jewelry products directly compete with Plaintiffs' products.

35. Defendant's sale of counterfeit and infringing jewelry products unlawfully wrests from Plaintiffs control over their reputation and, upon information and belief, is unjustly enriching Defendant.

36. Upon information and belief, Defendant's activity described herein is intentionally fraudulent, malicious, willful, and wanton.

37. Defendant's unauthorized acts as described herein have caused and will continue to cause irreparable damage to Plaintiffs and their business and goodwill unless restrained by this Court.

**FIRST CLAIM FOR RELIEF:**
**TRADEMARK COUNTERFEITING AND INFRINGEMENT OF REGISTERED TRADEMARK AND TRADE DRESS IN VIOLATION OF 15 U.S.C. § 1114(1)**

38. Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

39. The Alhambra Trade Dress is used in commerce, is non-functional, is inherently distinctive, and has acquired secondary meaning as the indicator of Plaintiffs as the exclusive source of products containing or incorporating such design.

40. Defendant has adopted the Alhambra Trade Dress and has, without Plaintiffs' authorization or consent, manufactured, exported, imported, displayed, advertised, reproduced, distributed, offered for sale, and/or sold jewelry designs that contain or incorporate the Alhambra Trade Dress that is the subject of U.S. Registration Nos. 4,326,883, 4,763,030, and 4,653,258, or marks or designs that are confusingly similar thereto.

41. Upon information and belief, by virtue of Plaintiffs' extensive and ongoing use and advertising of the above marks and trade dress, Defendant was on actual notice of Plaintiffs' exclusive rights in such marks and trade dress from the outset. In addition, Plaintiffs repeatedly warned Defendant of its unlawful activities.

42. Defendant's manufacturing, exporting, importing, displaying, advertising, reproducing, distributing, offering for sale, and/or sale of infringing Van Cleef & Arpels products bearing the Alhambra Trade Dress is likely to cause confusion, mistake, or deception as to the source or sponsorship of Defendant's goods. As a result of Defendant's unauthorized use of Plaintiffs' federally registered trademarks and trade dress, and/or trademarks and trade dress that are identical or highly similar to Plaintiffs' federally registered trademarks and trade dress, the public is likely to believe that Defendant's goods have been manufactured and/or approved by Plaintiffs. Such use falsely represents Defendant as being legitimately connected with and/or authorized by Plaintiffs, and places beyond Plaintiffs' control their own reputation and ability to control the use of their marks and trade dress and the quality of the products bearing those marks and trade dress.

43. Upon information and believe, Defendant's aforesaid conduct has been undertaken knowingly, willfully, and in bad faith.

44. Defendants' aforesaid conduct violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

45. Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF:
## UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a)

46. Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

47. The Alhambra Trade Dress is used in commerce, is non-functional, is inherently distinctive, and has acquired secondary meaning as the indicator of Plaintiffs as the exclusive source of products containing or incorporating such design.

48. Defendant has adopted the Alhambra Trade Dress and has, without Plaintiffs' authorization or consent, manufactured, exported, imported, displayed, advertised, reproduced, distributed, offered for sale, and/or sold jewelry designs that contain or incorporate the Alhambra Trade Dress, or marks or designs that are confusingly similar thereto.

49. Defendant's conduct is likely to cause confusion, cause mistake, and/or deceive as to the affiliation, connection, or association between Defendant and Plaintiffs, and/or as to Plaintiffs' sponsorship or approval of Defendant's goods, services, and/or commercial activities.

50. As a result of the foregoing, Defendant has falsely designated the origin of its products, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

51. Upon information and belief, Defendant's aforesaid conduct has been undertaken knowingly, willfully, and in bad faith.

52. Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

### THIRD CLAIM FOR RELIEF:
### STATUTORY UNFAIR COMPETITION IN
### VIOLATION OF N.J.S.A. § 56:4-1 ET SEQ.

53. Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

54. Defendant's acts set out above constitute unlawful, unfair, or fraudulent business practices in violation of N.J.S.A. § 56:4-1 et seq.

55. By reason of Defendant's infringing activities, Defendant has damaged and caused irreparable harm to Plaintiffs and, unless restrained, will continue to damage and cause irreparable injury to Plaintiffs' goodwill and reputation.

56. Defendant's acts have injured and will continue to injure Plaintiffs by, among other things, siphoning customers, diluting Plaintiffs' distinctive marks, confusing customers, and injuring Plaintiffs' reputation.

57. On information and belief, Defendant has profited from its unlawful acts.

58. Plaintiffs have no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF:
### STATE TRADEMARK DILUTION IN
### VIOLATION OF N.J.S.A. § 56:3-13.20

59. Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

60. Defendant's acts set out above are likely to dilute the distinctive quality of Plaintiffs' Alhambra Trade Dress, in violation of N.J.S.A. § 56:3-13.20.

61. Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF:
## COMMON LAW UNFAIR COMPETITION

62. Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

63. Defendant has injured Plaintiffs by depriving them of sales of their genuine goods, by injuring their business reputation, and by passing off Defendant's goods as Plaintiffs' genuine products. Defendant's conduct is likely to confuse a prospective buyer or customer exercising ordinary caution in his dealings as to the origin, source, or sponsorship of Defendant's products, or to cause mistake or to deceive the public into believing that Defendant's goods originate with or are otherwise authorized by Plaintiffs.

64. On information and belief, Defendant's unauthorized use of the Alhambra Trade Dress is with full knowledge of Plaintiffs' prior use of that trade dress in the United States, with full knowledge of the substantial reputation and goodwill associated with Plaintiffs and the Alhambra Trade Dress, and with full knowledge that Defendant has no license or authority to use the Alhambra Trade Dress. By appropriating the enormous goodwill of the Alhambra Trade Dress, Defendant unjustly enrich itself and damages Plaintiffs.

65. Defendant's conduct constitutes unfair competition with Plaintiffs under the common law of New Jersey.

66. Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiffs pray for judgment against Defendant as follows:

1. Permanently enjoining and restraining Defendant, its agents, servants, employees, successors, and assigns and all those in active concert or participation with them, from:

(a) Imitating, copying, or making unauthorized use of the Alhambra Trade Dress, including, without limitation, by manufacturing, reproducing, distributing, displaying, advertising, promoting, offering for sale, selling, importing, or exporting any products bearing the Alhambra Trade Dress, or any other confusingly similar mark or design in, on or through any medium, venue, outlet, store, factory, building, website, social media, blog, or other facility or establishment;

(b) Using any false designation of origin or false description or performing any act that can or is likely to lead members of the trade or public to believe that Defendant is associated with Plaintiffs or that any product manufactured, distributed, displayed, advertised, promoted, offered for sale, sold, imported, or exported by Defendant is in any manner associated or connected with Plaintiffs, is a genuine product of Plaintiffs, or is authorized, licensed, sponsored, or otherwise approved by Plaintiffs;

(c) Engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of the Alhambra Trade Dress;

(d) Engaging in any activity that dilutes or tarnishes, or is likely to dilute or tarnish, any of Plaintiffs' trademarks, trade dresses, or trade names; and

(e) Assisting or authorizing any third party to engage in any of the actions prohibited by subparagraphs (a)-(d) above, inclusive.

2. Directing that Defendant turn over to Plaintiffs for impoundment and eventual destruction, without compensation to Defendant, all materials in its custody, possession or control that violate the provisions of paragraphs 1(a)-(b) above, along with all articles by means of which such unauthorized copies may be reproduced.

3. Directing that Defendant, at its own expense, recall from any distributors, retailers, vendors, or others to whom it has distributed materials that violate the provisions of paragraph 1(a)-(b) above, and that Defendant deliver up to Plaintiffs for destruction all materials returned to it.

4. Directing that Defendant, pursuant to 15 U.S.C. § 1116(a), file with the Court and serve upon Plaintiffs, within thirty (30) days of the entry of injunction prayed for herein, a written report under oath or affirmed under penalty of perjury setting forth in detail the form and manner in which it has complied with the permanent injunction.

5. Awarding Plaintiffs all damages sustained as a result of Defendant's unlawful conduct described above pursuant to 15 U.S.C. § 1117(a) and 35 U.S.C. § 284, and that such sums be trebled pursuant to 15 U.S.C. § 1117(a) and 35 U.S.C. § 284.

6. Awarding Plaintiffs all the gains, profits, saving, and advantages realized by Defendant from its conduct described above pursuant to 15 U.S.C. § 1117(a) and 35 U.S.C. § 289.

7. Granting Plaintiffs punitive damages.

8. If Plaintiffs elect, statutory damages as the Court considers just, up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, as provided by 15 U.S.C. §§ 1117(b) & (c).

9. Granting Plaintiffs their full costs, including, as part of such costs, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 35 U.S.C. § 285.

10. Granting Plaintiffs both pre-judgment and post-judgment interest on each and every monetary award.

11. Granting Plaintiffs such other and further relief as the Court may consider equitable, just, and proper.

Dated: February 12, 2025

ROBINSON MILLER LLC

By: *s/ Keith J. Miller*
    Keith J. Miller
    Bradley A. Suiters
    Ironside Newark
    110 Edison Place, Suite 302
    Tel: (973) 690-5400
    *kmiller@rwmlegal.com*

*OF COUNSEL:*

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
John P. Margiotta (*pro hac vice* application to be submitted)
Parker C. Eudy (*pro hac vice* application to be submitted)
151 West 42nd Street, 17th Floor
New York, New York 10036
Tel: (212) 813-5900
*jmargiotta@fzlz.com*
*peudy@fzlz.com*

*Attorneys for Plaintiffs*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULES 11.2 & 40.1

I hereby certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: February 12, 2025                                   Respectfully submitted,

                                         By:    *s/ Keith J. Miller*
                                                Keith J. Miller, Esq.
                                                ROBINSON MILLER LLC
                                                Ironside Newark
                                                110 Edison Place, Suite 302
                                                Newark, NJ 07102
                                                Tel: (973) 690-5400
                                                Fax: (973) 466-2761
                                                Email: kmiller@rwmlegal.com

                                                *Attorneys for Plaintiffs*