NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RICHEMONT INTERNATIONAL SA et al.,

*Plaintiffs*,

v.

SILVERSMITHS INC.,

*Defendant*.

Civil Action No. 25-1204

**OPINION**

June 5, 2026

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Richemont International SA and Van Cleef & Arpels' ("Plaintiffs") Motion for Default Judgment against Silversmiths Inc. ("Defendant") pursuant to Federal Rule of Civil Procedure 55(b)(2). (ECF 9, "Motion" or "Mot.") The Court has decided this Motion upon submission, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Plaintiffs' Motion is **GRANTED**.

## I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter arises from Plaintiffs' claims for trademark and trade dress infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and New Jersey law. (ECF 1, "Complaint" or "Compl." ¶ 2.) Plaintiffs are Richemont International SA, both organized and having a principal place of business in Switzerland, and Van Cleef & Arpels, organized under Delaware law with a principal place of business in New York. (*Id.* ¶¶ 6-7.) Defendant is Silversmiths Inc., both incorporated and having a principal place of business in New Jersey. (*Id.* ¶ 8.)

Plaintiffs have been in the fine jewelry business since 1906. (*Id.* ¶ 9.) They are well known for their Alhambra collection, which features a quatrefoil motif ("Alhambra Trade Dress"). (*Id.* ¶¶ 11-16.) The Alhambra collection dates to the late 1960s, and Plaintiffs own three registered trademarks related to the Alhambra Trade Dress: Reg. Nos. 4,326,883, 4,763,030, and 4,653,258. (*Id.* ¶¶ 11, 17.) All three of the trademarks have become incontestable under the Lanham Act, 15 U.S.C. § 1065. (*Id.* ¶ 18.)

Defendant operates a jewelry store in North Bergen, New Jersey. (*Id.* ¶ 19.) Defendant also sells jewelry at trade shows throughout the United States and maintains a website. (*Id.* ¶¶ 21-22.) Plaintiffs claim Defendant sold jewelry pieces bearing imitations of their Alhambra Trade Dress without Plaintiffs' authorization or approval. (*Id.* ¶ 20.) In February 2020, Plaintiffs sent an agent to visit Defendant's store where they observed imitation necklaces for sale for approximately $50. (*See id.* ¶ 24.) In March 2020, Plaintiffs sent a cease-and-desist letter to Defendant. (*Id.* ¶ 26.) Defendant did not respond to Plaintiffs' letter and Plaintiffs' agent later observed Defendant selling imitation necklaces at a trade show in Las Vegas, Nevada in 2023. (*Id.* ¶¶ 26-27.) Plaintiffs sent another cease-and-desist letter, which included a reference to the 2020 letter, to Defendant in December 2023 and a follow-up letter in April 2024. (*Id.* ¶¶ 29-30.) Again, Defendant did not respond to Plaintiffs' letters. (*Id.*)

Plaintiffs filed the Complaint on February 12, 2025. (*See generally id.*) Plaintiffs allege trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114(1) (Count I); unfair competition in violation of 15 U.S.C. § 1125(a) (Count II); unfair competition in violation of N.J.S.A. § 56:4-1 *et seq.* (Count III); state trademark dilution in violation of N.J.S.A. § 56:3-13.20 (Count IV); and common law unfair competition (Count V). (*Id.* ¶¶ 38-66.) Defendant was served with the Complaint and Summons in this matter on February 14, 2025. (ECF 6, "Summons.")

2

Defendant did not answer or otherwise defend against the Complaint by the March 7, 2025 deadline. (ECF 7.) On March 10, 2025, Plaintiffs filed a request pursuant to Rule 55(a), and the Clerk of the Court entered default against Defendant. (*Id*.) In response to this Court's order to move this action, Plaintiffs moved for default judgment against Defendant on October 31, 2025. (ECF 8; Mot.) Defendant has not challenged the Clerk's entry of default or opposed the Motion.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) "authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). Before the Court grants a motion for default judgment, however, it must ensure, *inter alia*, (1) that personal jurisdiction exists over the defendants and (2) "that entry of default under Rule 55(a) was appropriate." *Gov't Emps. Ins. Co. v. Pennsauken Spine & Rehab P.C.*, No. 17-11727, 2018 WL 3727369, at *2 (D.N.J. Aug. 6, 2018). Where the Court has jurisdiction, because the entry of default judgment prevents a decision on the merits, the mere fact of default does not entitle a plaintiff to judgment. Rather, "[i]t is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

Once a party has defaulted, the "consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quoting 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)). An entry of default judgment requires that the Court determine whether a sufficient cause of action has been stated "since a party in default does not admit mere conclusions of law." *Chanel, Inc.*, 558 F.

Supp. 2d at 535. After a cause of action has been established, district courts must then determine whether the entry of default judgment would be proper by considering: (1) whether the party subject to default has a meritorious defense, (2) whether there is prejudice to the plaintiff if default judgment is denied, and (3) whether the default was due to the defendant's culpable conduct. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *Hritz*, 732 F.2d at 1181.

## III.    ANALYSIS

### A. Jurisdiction and Service of Process

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (internal citation omitted). Additionally, prior to determining whether a plaintiff is entitled to default judgment, a court must also determine whether there is sufficient proof of service. *Tr. of Int'l Union of Painters and Allied Trades Dist. Council 711 Health & Welfare Fund v. Danco Painting, LLC*, No. 17-05739, 2021 WL 3674353, at *3 (D.N.J. Aug. 19, 2021). This Court has both subject matter jurisdiction over this dispute and personal jurisdiction over Defendant, and Defendant was properly served.

A district court has original jurisdiction over an action when there is diversity jurisdiction pursuant to 28 U.S.C. § 1332 or when there is federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs have raised issues under the Lanham Act, (Compl. ¶¶ 38-52), and supplemental jurisdiction of Plaintiffs' state and common law claims, (*id.* ¶¶ 53-66), pursuant to 28 U.S.C. § 1367.

The Court also retains personal jurisdiction over Defendant. "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for

4

general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (alteration in original) (internal quotation omitted). Here, Plaintiffs allege that Defendant is incorporated in New Jersey and has a principal place of business in North Bergen, New Jersey. (Compl. ¶ 8.) Because Defendant is at home in New Jersey, this Court has personal jurisdiction over Defendant.

As a corporation, Defendant may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Here, Plaintiffs filed proof of service on February 17, 2025. (*See* Summons.) The proof of service indicates that personal service was made upon Defendant's managing agent at Defendant's principal place of business. (*Id.*) Thus, service was proper, and the Court is satisfied that it has jurisdiction to enter default judgment. *See Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).

### B. Entry of Default

Second, the Court must ensure that the entry of default under Rule 55(a) was appropriate. Rule 55(a) directs the Clerk of the Court to enter a party's default when the party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Defendant failed to plead or otherwise defend against the Complaint. Accordingly, the Clerk appropriately issued the entry of default on March 10, 2025.

### C. Fitness

"Third, the Court must confirm that the defaulting parties are not infants or incompetent persons, or persons in military service exempted from default judgment." *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 822 (D.N.J. 2021) (citing Fed. R. Civ. P. 55(b)(2)). Neither of these requirements apply to Defendant because it is a corporate entity. *See, e.g., TBI Unlimited,*

*LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2016 WL 5660426, at *3 (D.N.J. Sept. 29, 2016).

### D. Sufficiency of Plaintiffs' Cause of Action

Fourth, the Court must determine whether the Complaint states a proper cause of action. In performing this inquiry, the Court accepts as true a plaintiff's well pleaded factual allegations while disregarding mere legal conclusions. *See DirecTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533 at *1 (D.N.J. Mar. 14, 2006). The Court finds that the Complaint states a valid cause of action for federal trademark counterfeiting and infringement under Section 32(1) of the Lanham Act; unfair competition under Section 43(a) of the Lanham Act; and trademark dilution under New Jersey Law.[1]

### 1. Trademark Infringement and Unfair Competition

Federal trademark infringement and federal unfair competition claims are measured by identical standards. *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). To establish a claim for federal trademark infringement, a plaintiff must show that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) defendant's use of the mark causes a likelihood of confusion. *E.A. Sween Co. v. Deli Exp. of Tenafly, LLC*, 19 F. Supp. 3d 560, 568 (D.N.J. 2014) (quoting *A&H Sportswear, Inc.*, 237 F.3d at 210). "[M]arks are 'confusingly similar if ordinary consumers would likely conclude that the two products share a common source, affiliation, connection, or sponsorship.'" *Democratic Party of N.J., Inc. v.*

---

[1] Because "the elements of a claim of unfair competition under the Lanham Act are the same as for claims of unfair competition and trademark infringement under New Jersey statutory and common law," this Court refrains from engaging in redundant, state-specific analyses. *Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 317-18 (D.N.J. 2006); *see also Konowicz v. Carr*, 838 F. App'x 1, 7 (3d Cir. 2020).

*Devine*, No. 22-01268, 2022 U.S. Dist. LEXIS 181405, at *17-18 (D.N.J. Oct. 4, 2022) (quoting

*A&H Sportswear, Inc.*, 237 F.3d at 216).

Plaintiffs have shown all three elements of a federal trademark infringement and unfair

competition claim.  For the first and second elements, Plaintiffs own valid and legally protectable

marks that are incontestable: Reg. Nos. 4,326,883, 4,763,030, and 4,653,258.  (Compl. ¶¶17-18);

*see also Com. Nat. Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000)

("If the mark at issue is federally registered and has become incontest[a]ble, then validity, legal

protectability, and ownership are proved.").  For the confusingly similar marks element, courts

typically look to ten factors known as the "*Lapp* factors," but where "the defendant has failed to

respond, the Court lacks a sufficient basis for a full analysis." *Luxottica Grp. S.p.A. v. Accessory

Consultants LLC*, No. CV1911732, 2020 WL 1910378, at *3 (D.N.J. Apr. 20, 2020).  Here, "a

comparison of the registered and allegedly infringing marks" is sufficient. *Id.*  The Complaint

contains three photographs of jewelry for sale by Defendant and depictions of Plaintiffs' registered

marks; on comparison, Defendant's necklaces are an imitation because they bear a near identical

three-dimensional, quartrefoil-shaped ornament that consists of a beaded outer edge and four larger

beads at central points within the inner solid flat portion. (*Compare* Compl. ¶¶ 25-28, *with id.* ¶¶

12-14, 17.)  Therefore, the Court finds that Defendant's jewelry, as shown in the Complaint, is

confusingly similar to Plaintiffs' Alhambra Trade Dress.  Accordingly, Plaintiffs have stated a

sufficient cause of action for trademark infringement under the Lanham Act.

### 2.  Trademark Counterfeiting

"To establish trademark counterfeiting . . . the record must show (1) the defendant infringed

a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (2) the

defendant intentionally used the trademark knowing it was counterfeit or was willfully blind to

such use." *Coach, Inc. v. Ocean Point Gifts*, No. 09-4215, 2010 WL 2521444, at *3 (D.N.J. June 14, 2010).  "The only distinction between the standard for federal trademark counterfeiting and the standard for establishing infringement is that to obtain treble or statutory damages for a counterfeiting claim, a plaintiff must show that the defendant intentionally used the plaintiff's trademark, knowing that it was a counterfeit." *Id.*  (quoting *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536-37 (D.N.J. 2008)).  "Intent can be inferred from continued use after being given notice." *Id.*

Plaintiffs have met both elements of a federal trademark counterfeiting claim.  First, as noted above, Defendant infringed on Plaintiffs' registered marks.  Second, the Court infers Defendant's intent from Defendant continuing to display the infringing jewelry for sale at a tradeshow after receiving a cease-and-desist letter from Plaintiffs.  (Compl. ¶¶ 26-30; ECF 9-7, Mot. Ex. E.)  Therefore, Plaintiffs have stated a sufficient cause of action for trademark counterfeiting under the Lanham Act.

### 3.  Trademark Dilution

Trademark dilution claims under New Jersey law are measured by the same standard as federal trademark dilution claims.  *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 294 (D.N.J. 2006).  To establish trademark dilution, a plaintiff must show: (1) the plaintiff owns a famous mark; (2) the defendant is making commercial use of the mark in interstate commerce; (3) defendant's use began after the mark became famous; and (4) defendant's use lessened the plaintiff's capacity of its mark in identifying and distinguishing goods or services.  *Zinn v. Seruga*, No. 05-3572, 2009 WL 3128353, at *29 (D.N.J. Sept. 28, 2009); *see also Times Mirror Magazines, Inc. v. Las Vegas Sports News*, 212 F.3d 157, 163 (3d Cir. 2000).  To determine fame, courts consider "(1) the length of exclusivity of use of the mark; (2) the size or prominence of the

plaintiff's enterprise; (3) existence of substantial advertising by the plaintiff; (4) established place in the market and (5) proof of intentional copying." *800-JR Cigar, Inc.*, 437 F. Supp. 2d at 294. Additionally, the fame of Plaintiffs' Alhambra Trade Dress is considered within the jewelry market. *See id.*

Plaintiffs have shown all four elements of a trademark dilution claim. First, Plaintiffs argue the Alhambra Trade Dress has been the center of its signature jewelry collection since the late 1960s, and Plaintiffs invested in successful advertising to achieve success in the high-end jewelry market. (Compl. ¶¶ 11-16.) Thus, Plaintiffs' registered marks are famous. Plaintiffs also allege Defendant sold counterfeits out of its storefront and tradeshows across the United States after the Alhambra Trade Dress collection became famous. (*See id.* ¶¶ 19-21.) Finally, Plaintiffs claim Defendant's actions lessen Plaintiffs' control over their reputation for quality goods in the jewelry market. (*See id.* ¶¶ 32-35.) Therefore, Plaintiffs have stated a sufficient cause of action for trademark dilution under New Jersey law.

### E.  Whether The Entry of Default Judgment Would Be Proper

The Court must next consider (1) whether the party subject to the default has a meritorious defense, (2) the prejudice suffered by the party seeking default judgment, and (3) the culpability of the party subject to default. *Doug Brady, Inc.*, 250 F.R.D. at 177. Here, Defendant lacks a meritorious defense, Plaintiffs will suffer prejudice absent entry of default judgment because they lack other means of obtaining relief, and Defendant's failure to appear or defend itself is evidence of its culpability. *See Coach, Inc.*, 2010 WL 2521444, at *5; *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club*, 175 F. App'x 519, 523 (3d Cir. 2006) (holding that a defendant's repeated

9

failure to respond to communications from both the plaintiff and the court can establish culpability).  The Court thus concludes that all three factors weigh in favor of default judgment.

### F.  Remedies

Plaintiffs seek the following relief: (1) a permanent injunction; (2) statutory damages; and (3) attorneys fees and costs.  (Compl. at 16-18.)

### 1.  Permanent Injunction

Plaintiffs request a permanent injunction against Defendant.  (Mot. at 14.)  To obtain a permanent injunction, a plaintiff must demonstrate

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  For the first and second elements, courts in this jurisdiction have held that "[i]rreparable injury includes loss of control of reputation, loss of trade, and loss of good will."  *Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp*, No. 20-9537, 2021 WL 1541054, at *9 (D.N.J. Apr. 20, 2021).  This injury is "the type[] of injur[y] which would constitute irreparable harm that cannot be compensated with money damages."  *Id.* (quoting *Isr. Disc. Bank. of N.Y. v. H.N. Int'l Grp., Inc.*, No. 16-6258, 2016 WL 6023155, at *4 (D.N.J. Oct. 14, 2016) (alterations in original)).  For the third and fourth elements, "self-inflicted harm typically does not outweigh the immeasurable damage done by trademark infringement" and "the public interest is most often a synonym for the right of the public not to be deceived or confused."  *Audi AG v. Posh Clothing, LLC*, No. 18-14254, 2019 WL 1951166, at *5 (D.N.J. May 2,

10

2019) (quoting *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992)).  The Court finds that a permanent injunction is appropriate.

Here, Defendant infringed on Plaintiffs' registered marks, causing a loss of control of Plaintiffs' reputation and good will.  This injury amounts to irreparable harm that warrants injunctive relief.  The balance of hardships favors Plaintiffs, as any harm to Defendant is self-inflicted by its unlawful conduct under the Lanham Act.  "Additionally, a permanent injunction benefits the public because it inhibits Defendant['s] ability to deceive or confuse consumers into believing that [its] products are associated with Plaintiffs' marks." *Id.*  For these reasons, the Court grants Plaintiffs a permanent injunction against Defendant from infringing or counterfeiting Plaintiffs' registered marks as described in the accompanying Order.

### 2.  Statutory Damages

Plaintiffs request damages of $6,000,000.  (Mot. at 16.)  While the factual allegations of the Complaint are "taken as true," Plaintiffs must still prove damages. *Comdyne I, Inc.*, 908 F.2d at 1149.  Plaintiffs are pursuing statutory damages rather than actual damages under the Lanham Act.  (Mot. at 16 & n.2.)  For the foregoing reasons, the Court awards $12,000.

For statutory damages, a plaintiff may recover "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c)(1).  "If the use of the counterfeit mark was willful, the maximum increases to $2,000,000 per mark per type of good." *Coach, Inc.*, 2010 WL 2521444, at *5 (citing § 1117(c)(1)).  Willfulness is met if the defendant showed "an 'aura of indifference to plaintiff's right' or a 'deliberate and unnecessary duplicating of a plaintiff's mark … in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had

11

nurtured." *Id.* (quoting *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999)). "In the absence of clear guidelines for setting a statutory damage award, courts have tended to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants …." *Id.* at 6 (quoting *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583-84 (E.D. Pa. 2002)). Courts in this district have been guided by past statutory damage awards and whether the requested damages "bear some relation to the actual damages suffered." *Id.* (quoting *Bly v. Banbury Books, Inc.*, 638 F. Supp. 983, 987 (E.D. Pa.1986)).

Plaintiffs' request of $6,000,000 is the sum of the maximum statutory damages for each of Plaintiffs' three registered marks. (Mot. at 18.) Although "[w]illfulness may be inferred where, as here, the defendant made use of a substantially identical copy of a well-known mark," *Luxottica Grp. S.p.A.*, 2020 WL 1910378, at *5, the Court is not persuaded by Plaintiffs' argument that higher statutory damages are warranted because Defendant is allegedly operating at a wholesaler level on the Internet. (Mot. at 18-19.) Plaintiffs themselves admit that they "are not certain of the size and scope of Defendants' [sic] infringing conduct and counterfeit operations." (*Id.* at 17.) They are not certain how many, if there are any, infringing necklaces Defendant has sold at its single storefront in North Bergen, New Jersey, or at the tradeshow Defendant attended in Las Vegas. (*See id.*) Furthermore, Plaintiffs do not provide any evidence that Defendant advertised the sale of its infringing necklaces on its website, let alone the wholesaler section of the website, other than conclusionary statements in their attorney's declaration. (*See* Margiotta Decl. ¶¶ 6-8.) The Court need not and does not accept such statements for its damages calculation. *See Comdyne I, Inc.*, 908 F.2d at 1149.

As evidence of Defendant's unlawful conduct, Plaintiffs provide a photo of a single infringing necklace that was displayed for sale for $50 at Defendant's store in 2020 and photos of

12

a display and packaged infringing necklaces at a tradeshow Defendant attended in 2023. (Compl. ¶¶ 24-28.) This Court has noted the difference between "typical Internet cases involv[ing] a suit against someone selling counterfeit luxury items on the Internet" and "typical cigarette case[s] involv[ing] a small retail store selling counterfeit cigarettes." *Coach, Inc.*, 2010 WL 2521444, at *6; *see also Luxottica Grp. S.p.A.*, 2020 WL 1910378, at *5 (noting that a higher damages figure may be appropriate "[w]here a seller is distributing infringing products over the internet . . . to reflect the potential for greater sales volume or profits"). This case appears to fall in the middle. While the counterfeit goods sold here are luxury items, courts may still find a lower damages figure appropriate where the defendant was operating on a smaller scale. *Luxottica Grp. S.p.A.*, 2020 WL 1910378, at *5 (comparing awards ranging between $50,000 and $750,000 per mark from cases where counterfeiting took place online, with awards of $2,000 and $3,000 per mark against a single brick-and-mortar operation).

The Court awards $4,000 per mark for a total of $12,000. The Court finds that this award aligns with past statutory damage awards and is sufficient to deter and punish Defendant. To ensure this amount "bears some relation to the actual damages suffered," *Coach, Inc.*, 2010 WL 2521444, at *5, this Court notes that Defendant's infringing necklaces were priced at $50 and although Plaintiffs are unsure of the quantity sold, Plaintiffs requested $8,000 in restitution in their 2023 cease-and-desist letter to Defendant. (ECF 9-9.) This Court's determination of $12,000 in statutory damages is more reasonable than the requested award of $6,000,000, which would be an

outlier amongst precedent and would not bear a relation to Plaintiffs' approximate actual damages. *See Coach, Inc.*, 2010 WL 2521444, at *8.

### 3. Attorneys' Fees and Costs

Although Plaintiffs fail to argue for costs and attorneys' fees in their moving brief, (*see* Mot.), the request is present in the Complaint. (Compl. at 18.) Section 1117(a) allows the Court to grant attorneys' fees "in exceptional cases." 15 U.S.C. § 1117(a). "While the statute does not explicitly define the term 'exceptional,' generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Audi AG*, 2019 WL 1951166, at *7 (quoting *Louis Vuitton Malletier & Oakley, Inc. v. Veil*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002)).

Here, the Court has already found Defendant's conduct to be willful. Therefore, Plaintiffs are entitled to attorneys' fees and costs. Plaintiffs may file a certification regarding the total amount of their attorneys' fees and costs within fourteen (14) days of the entry of this Opinion and accompanying Order.

### IV.    CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Default Judgment (ECF 9) is **GRANTED**. An accompanying Order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:    Clerk
cc:      James B. Clark, U.S.M.J.
         Parties

14